IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00089-MR

| | |
|---|---|
| JENNIFER HINYUB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| AA RECOVERY SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment. [Doc. 10].

**I. BACKGROUND**

On April 15, 2020, the Plaintiff Jennifer Hinyub (the "Plaintiff") initiated this action against the Defendant AA Recovery Solutions, Inc (the "Defendant"). [Doc. 1]. The Plaintiff's Complaint asserts claims against the Defendant for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and the North Carolina Collection Agency Act, N.C. Gen. State. § 58-70, *et seq.* ("NCCAA"). [Id. at 1]. For damages, the Plaintiff seeks statutory damages of up to $1,000 under the FDCPA; actual damages and civil penalties of up to $4,000 under the NCCAA; and reasonable attorney's fees and costs. [Id. at ¶¶ 37-38, 43].

On April 27, 2020, the Plaintiff filed a proof of service indicating that the Defendant was served on April 22, 2020. [Doc. 4]. The Defendant, however, did not make an appearance or otherwise defend the action. On May 14, 2020, the Plaintiff filed a Motion for Entry of Default against the Defendant. [Doc. 5-2]. On May 15, 2020, the Clerk entered a default against the Defendant. [Doc. 13]. On June 19, 2020, the Plaintiff filed the present Motion for Default Judgment against the Defendant. [Doc. 10].

## II. STANDARD OF REVIEW

"To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." Hayhurst v. Liberty Int'l Underwriters, No. 5:08-cv-5347, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W. Va. Jan. 29, 2009); see Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06-cv-264, 2006 WL 1720681, at *14 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment."). Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought. Rule 55(b) "authorizes the entry of a default judgment when a

defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). By such a default, a defendant admits the well-pleaded factual allegations in the plaintiff's complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of the Plaintiff's Complaint are deemed admitted by virtue of the Defendant's default. Id. The following is a summary of the relevant and admitted facts.

The Plaintiff is a North Carolina resident. [Doc. 1 at ¶ 7]. The Defendant is a New York corporation and a national debt collection agency with its headquarters located in Clearwater, Florida. [Id. at ¶¶ 13, 15].

The Plaintiff owes a debt related to personal, family, and household purposes. [Id. at ¶ 19]. The Defendant began attempting to collect the debt by calling the Plaintiff's cell phone in January 2020. [Id. at ¶ 21]. On February 10, 2020, the Plaintiff answered a collection call on her cell phone from the Defendant's collector, who identified herself as Simone. [Id. at ¶ 22]. The Plaintiff told Simone that she wanted the Defendant and its agents to stop calling her. [Id. at ¶ 23]. The Defendant continued to call the Plaintiff

3

Case 1:20-cv-00089-MR-WCM   Document 11   Filed 10/05/20   Page 3 of 20

despite her request to stop calling her and left voicemail messages for her. [Id. at ¶ 24, 30].

The Defendant, by the actions of its same agent Simone, then called the Plaintiff's sister and left her a voicemail message attempting to collect the debt from the Plaintiff. [Id. at ¶¶ 25, 31]. The Defendant likewise called the Plaintiff's brother and left him a voicemail message attempting to collect the debt from the Plaintiff. [Id. at ¶¶ 26, 31]. Those voicemail messages insinuated that the Plaintiff had committed a crime, made vague and veiled threats of legal action, and provided the Defendant's telephone number. [Id. at ¶ 31]. In neither voicemail message did Simone disclose that she was calling on behalf of the Defendant, that the calls were attempting to collect a debt, or that the calls were seeking information regarding the Plaintiff's location. [Id.].

## IV. DISCUSSION

### A. Jurisdiction

The Plaintiff's Complaint alleges a violation of the FDCPA, which is a federal law. [Doc. 1 at ¶ 36-39]. As such, the Court has federal question jurisdiction over the Plaintiff's FDCPA claim. See 28 U.S.C. § 1331. The Court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form

4

part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Because the Plaintiff's NCCAA claims are related to the FDCPA claim, the Court has supplemental jurisdiction over that claim. Accordingly, the Court has subject-matter jurisdiction over this action.

The Court must also have personal jurisdiction over the Defendant as required to render a valid default judgment. For the Court to have personal jurisdiction, the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014).

The Plaintiff's Complaint contains jurisdictional facts sufficient to support the exercise of personal jurisdiction over the Defendant by setting forth that the Defendant directed phone calls attempting to collect on a debt

5

to the Plaintiff when she was located in North Carolina. [Doc. 1 at ¶¶ 6, 19-25]. Given those contacts with this forum, the Defendant should have reasonably anticipated being haled into this Court.

The Plaintiff has also complied with her obligations to effectuate service of process by serving the Defendant with a summons and a copy of the Complaint pursuant to Federal Rule of Civil Procedure 4. [Doc. 4]. Finally, venue is proper under 28 U.S.C. § 1391(b) and (c). Accordingly, this Court has jurisdiction over this matter and will proceed to address the merits of the Plaintiff's Motion for Default Judgment.

### B. FDCPA

In Count I of the Complaint, the Plaintiff asserts claims against the Defendant for violations of the FDCPA. [Doc. 1 at ¶¶ 36-39].

In general, the FDCPA regulates abusive and unfair debt collection practices, ensures consumer protection, encourages fair competition between debt collectors, and provides a remedy for consumers victimized by unscrupulous debt collection practices. See 15 U.S.C. § 1692 *et seq.* To establish a claim for a violation of the FDCPA, the Plaintiff must show that (1) she has been the object of collection activity arising from consumer debt; (2) the defendant qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. See

Dikun v. Streich, 369 F.Supp.2d 781, 784–85 (E.D.Va. 2005). Although the FDCPA prohibits a number of debt collection procedures, "[t]he FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability." Akalwadi v. Risk Mgt Alternatives, Inc., 336 F.Supp.2d 492, 500 (D. Md. 2004) (citing Spencer v. Hendersen–Webb, Inc., 81 F.Supp.2d 582, 590 (D. Md. 1999)).

Taking the Plaintiff's allegations as true by virtue of the Defendant's default, the Plaintiff has been the object of collection activity arising from consumer debt; the Defendant qualifies as a debt collector under the FDCPA; and the Defendant violated the FDCPA when attempting to collect the debt from the Plaintiff in several ways, including calling the Plaintiff after being told not to do so and calling the Plaintiff's brother and sister without a permissible purpose. [Doc. 1 at ¶¶ 7-10, 19-36]. Accordingly, the Plaintiff has established that the Defendant violated the FDCPA.

Under the FDCPA, the Court can award statutory damages of up to $1,000 based on the "frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" 15 U.S.C. § 1692k. Considering the

number of FDCPA violations committed by the Defendant,[1] the number of parties that the Defendant contacted, and the Defendant's insinuation that the Plaintiff committed a crime, the Court will award statutory damages under the FDCPA. Because the FDCPA only provides for a maximum award of $1,000 in statutory damages per lawsuit, the Court will award the Plaintiff the maximum of $1,000 in statutory damages. 15 U.S.C. § 1692k(b)(1); Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994); Richardson v. William Sneider and Associates, LLC, 2012 WL 3525625 * *5-6 (E.D. Va. 2012).

### C.  NCCAA[2]

In Count II of the Complaint, the Plaintiff asserts claims against the Defendant for violations of the NCCAA. [Doc. 1 at ¶¶ 36-39].

Similar to the FDCPA, the NCCAA regulates "collection agencies," defined as persons "directly or indirectly engaged in soliciting, from more than one person[,] delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly

---

[1] The Court finds that the Defendant's conduct at least violated §§ 1692b, 1692c(b), 1692d, 1692d(5), 1692d(6), 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), and 1692e(11).

[2] "While a party may typically recover only once for [her] injuries, '[d]amages under the FDCPA do not preclude damages under relevant state law,' here the NCCAA." Leto v. World Recovery Serv., LLC, No. 3:14-cv-00489-FDW, 2015 WL 1897060, at *3 (W.D.N.C. Apr. 27, 2015) (Cogburn, J.) (citing Baie v. Prime West Mgmt. Recovery, LLC, 2011 WL 1257148, at *9 (E.D.N.C. 2011)).

engaged in the asserting, enforcing or prosecuting of those claims," N.C. Gen. Stat. § 58-70-15(a) (internal quotation marks omitted). The NCCAA prohibits collection agencies from engaging in harassing or oppressive conduct and collecting or attempting to collect a debt by using coercion or fraudulent, deceptive, or misleading representations. N.C. Gen. Stat. §§ 58-70-95(7), 58-70-100, 58-70-110.

Taking the Plaintiff's allegations as true by virtue of the Defendant's default, the Plaintiff has been the object of collection activity arising from consumer debt; the Defendant qualifies as a collection agency under the NCCAA; and the Defendant violated the NCCAA when attempting to collect the debt from the Plaintiff. [Doc. 1 at ¶¶ 11-14, 40-41]. Accordingly, the Plaintiff has established that the Defendant violated the NCCAA.

The NCCAA provides for actual damages and statutory damages of between $500 and $4,000 per violation.[3] N.C. Gen. Stat. § 58-70-130(b). "Violation" does not correlate to the number of counts alleged, but to each separate instance where the defendant violated the statute. See Baie, 2011 WL 1257148 at *10-11 (awarding $2,000 for each of the five occasions where the defendant contacted the plaintiff); In re Kirkbride, 2010 WL 4809334, at

---

[3] The Plaintiff does not seek actual damages or provide any evidence of actual damages that she sustained as a result of the Defendant's NCCAA violations.

9

*14 (E.D.N.C. 2010) (awarding monetary damages per call, not per count of the NCCAA violated). The Plaintiff does not, however, specifically allege the number of instances that the Defendant violated the NCCAA. For example, although the Plaintiff alleges that she told the Defendant to stop calling her, she does not specifically allege the number of times that the Defendant continued to call. Likewise, although the Plaintiff alleges that the Defendant left multiple voicemail messages for her sister and brother, the Plaintiff does not specifically allege the number of messages that the Defendant left. Giving the Plaintiff's vague pleadings a generous inference, the Court finds that she has alleged at least six violations of the NCCAA by alleging that the Defendant called her, her brother, and her sister multiple times. Nevertheless, the Plaintiff's Motion for Default Judgment requests "statutory damages not exceeding $4,000 pursuant to the North Carolina Collection Agency Act, § 58-70-130(b)." [Doc. 10 at 4]. Because Federal Rule of Civil Procedure 54(c) states that the damages awarded in a default judgment cannot exceed the amount demanded in the pleadings, the Court will award the Plaintiff $4,000 in statutory damages for the Defendant's NCCAA violations.

## D. Attorney's Fees

The Plaintiff requests attorney's fees and costs pursuant to the FDCPA. [Doc. 10 at 4]. Attorney's fees may be awarded where expressly authorized by contract or statute. United Food and Commercial Workers, Local 400 v. Marval Poultry Co., Inc., 876 F.2d 346, 350 (4th Cir. 1989) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975)). The FDCPA states that "in the case of a successful action" a plaintiff may recover a "reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "This determination is within the sound discretion of the court." Barnett v. Creditors Specialty Serv., Inc., No. 1:12-cv-00303, 2013 WL 1629090, at *3 (W.D.N.C. Apr. 16, 2013) (Reidinger, J.) (citing Beasley v. Sessoms & Rogers, P.A., 2011 WL 5402883 at *2 (E.D.N.C. 2011)). Because the Plaintiff has obtained a default judgment against the Defendant, the Court will award attorney's fees under the FDCPA.

"The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). The burden is on the fee applicant to justify the reasonableness of the requested fee. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Restaurant Group, Inc. v. Scurmont, LLC, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990)).

### 1. Time and Labor Expended

The Plaintiff's attorney incurred 15 hours on this case, including 12.2 hours of attorney time and 2.8 hours of paralegal time. [Doc. 10-1 at 7]. That time was expended corresponding with the Defendant, effectuating service

of process on the Defendant, securing entry of default against the Defendant, and filing the present Motion for Default Judgment against the Defendant. [See Doc. 10-4 at 3-4]. The Court has carefully reviewed the billing records submitted by the Plaintiff and finds that the time expended by her attorney attempting service of process on the Defendant, seeking an entry of default against the Defendant, and securing a default judgment against the Defendant was necessary and reasonable.

### 2. Novelty and Difficulty of the Questions Raised

This case required the Plaintiff's attorney to establish the Plaintiff's entitlement to a default judgment on two separate claims with two separate bodies of relevant case law. The questions presented by those claims, however, should not have been particularly difficult for the Plaintiff's attorney, who attests that he regularly handles consumer rights cases. [Doc. 10-3 at ¶¶ 4-7]. Accordingly, this factor bears little weight in the calculation of a reasonable fee.

### 3. Skill Required to Properly Perform the Legal Services

As discussed above, the questions presented by this case should not have been particularly challenging for an attorney experienced in consumer rights cases. Nevertheless, the Defendant's unwillingness to waive service or enter an appearance in this matter forced the Plaintiff's attorney to spend

13

time and effort exhausting avenues for service of process and documenting those efforts to secure entry of default. While performing those actions does not take significant skill, properly documenting those actions to ensure that default will be entered does require some ability. As such, this factor has been given some minor weight in determining a reasonable fee.

### 4. Opportunity Costs of Litigation

This litigation necessarily prevented the Plaintiff's attorney from devoting time to other matters, and the Plaintiff's attorney indicates that this matter was less lucrative than other types of cases. [Doc. 10-1 at 7]. Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). Accordingly, this factor weighs in favor of awarding a fee based on a full hourly lodestar rate.

### 5. Customary Fee for Similar Work

The Plaintiff requests rates of $357 per hour for her attorney, James J. Parr, and $117 per hour for his paralegal, Jacqueline Laino. [Doc.10-1 at 7-8]. To support that request, the Plaintiff submits information from the United States Consumer Law Survey Report, which shows that the mean hourly rate for consumer law attorneys practicing in the Asheville, North Carolina market

who have been in practice between six and ten years[4] is $325 per hour and that the mean hourly rate for paralegals in the Asheville market is $117 per hour. [Doc. 10-2 at 2, 3]. These statistics also show that the median fee for attorneys is less than the mean. [Id. at 2].

The Plaintiff does not present any affidavits of attorneys who regularly practice in the area of Asheville, North Carolina, in order to establish the prevailing rates in the local market or to corroborate the statistical data presented.

The Plaintiff does provide a declaration from her attorney, James J. Parr, stating that the United States District Court for the Western District of Missouri awarded him a rate of $325 per hour in a case this year. [Doc. 10-3 at ¶ 4 (citing Foley v. International Recovery Partners & Assoc., LLC, No. 4:20-cv-00049-BP (W.D. Mo. May 27, 2020))]. The Plaintiff's counsel, however, maintains his practice in Norcross, Georgia, and not within this District. Thus, counsel offers no personal familiarity with local prevailing rates.

As the Fourth Circuit has recognized:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the

---
[4] The Plaintiff's counsel has been licensed to practice for six years. [Doc. 10-3 at 2].

15

> attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009) (citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In addition to consideration of specific evidence regarding the prevailing market rate, the Court may rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994) ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.").

Based on the foregoing, the Court will find that a reasonable hourly rate for the work of Plaintiff's counsel on this matter, considering his expertise and experience, to be $275 per hour, and for paralegal work to be $100 per hour.

### 6. Attorney's Expectation at Outset of Litigation

The Plaintiff's attorney does not provide any details regarding his expectations at the outset of litigation. Accordingly, this is not a factor in calculating a reasonable fee.

### 7. Time Limitations

The Plaintiff does not claim that this case involved any urgency or any particular time limitations. Accordingly, this factor also is not a factor in calculating a reasonable fee.

### 8. Experience, Reputation, and Ability of Counsel

The Plaintiff's attorney attests that he has significant experience in consumer rights cases because he focuses largely on consumer law and has settled over 600 consumer rights cases. [Doc. 10-3 at ¶¶ 5-7]. Accordingly, this factor weighs in favor of awarding a fee based upon a full hourly lodestar rate, as counsel was able to represent the Plaintiff in an efficient manner.

### 9. Undesirability of the Case in the Legal Community

The Plaintiff highlights that the fee-shifting provision of the FDCPA encourages attorneys to take cases, like consumer rights cases, that they otherwise would not because of the comparatively smaller amounts at stake. [Doc. 10-1 at 7]; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 549 (2010). Nevertheless, the Plaintiff's attorney regularly handles consumer rights cases and this case did not appear to present any difficult issues. In fact, the Plaintiff's attorney was able to obtain a default judgment worth several thousand dollars by incurring only 15 hours of time.

Accordingly, this factor weighs in favor of awarding a fee based upon a full hourly lodestar rate.

### 10. Relationship between the Attorneys and Clients

The Plaintiff's attorney does not provide any details regarding his relationship with his client. Accordingly, this factor bears little weight in the calculation of a reasonable fee.

### 11. Fee Awards in Similar Cases

The Plaintiff's attorney attests that the United States District Court for the Western District of Missouri awarded him a rate of $325 per hour in a case this year. [Doc. 10-3 at ¶ 4 (citing Foley v. International Recovery Partners & Assoc., LLC, No. 4:20-cv-00049-BP (W.D. Mo. May 27, 2020))]. That District, however, is far distant from the District where this matter is pending, and the Plaintiff has presented no evidence on which to base a comparison between the market in that area to the Asheville, North Carolina, market for legal services. As such, this factor weighs little in the determination of a reasonable fee.

### 12. Amount Involved and Results Obtained

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v.

Eckerhart, 461 U.S. 424, 436 (1983)). Here, the Court awarded the Plaintiff the full amount of damages that she sought on her claims under the FDCPA and the NCCAA. [Doc. 10 at 4]. As such, this factor weighs in favor of award a fee based upon a full hourly lodestar rate.

After consideration of all the above factors, the Court concludes that the lodestar method results in a reasonable award. As such, the Court will award the Plaintiff $3,355 for counsel's work (12.2 hours x $275 per hour), and $280 for paralegal time (2.8 hours x $100 per hour), for a total fee of $3,635.

### E. Costs

In addition to attorneys' fees, the Plaintiff seeks an award of $450 in costs for the filing fee in this matter and the costs of serving the Defendant. [Doc. 10-1 at 6-7]. The FDCPA allows a successful plaintiff to recover their costs, including filing fees. 15 U.S.C. § 1692k(a)(3). The Court finds the requested costs to be reasonable and therefore awards the Plaintiff $450 in costs. See 28 U.S.C. § 1920.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 10] is **GRANTED**. The Plaintiff shall have and recover of

the Defendant a judgment of $1,000 pursuant to 15 U.S.C. § 1692k(b)(1), and a judgment of $4,000 pursuant to N.C. Gen. Stat. § 58-70-130(b)1), for a total judgment of $5,000.

**IT IS FURTHER ORDERED** that the Plaintiff's request for attorney's fees under the FDCPA is **GRANTED**, and the Plaintiff shall have and recover from the Defendant $3,635.00 in attorneys' fees and $450.00 costs pursuant to 15 U.S.C. § 1692k(a)(3).

**IT IS SO ORDERED**.

Signed: October 3, 2020

Martin Reidinger
Chief United States District Judge